# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| ANDY G. MINISH, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | JURY TRIAL DEMANDED |
| KUBOTA MANUFACTURING OF AMERICA CORPORATION, | 2:21-CV-238-RWS |
| Defendant. | |

## COMPLAINT

1. COMES NOW Plaintiff Andy G. Minish ("Plaintiff"), through his undersigned counsel, and files this Complaint against Kubota Manufacturing of America Corporation ("Kubota" or "Defendant"), and shows the Court as follows:

## NATURE OF COMPLAINT

2. Plaintiff asserts an unpaid overtime claim under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended ("FLSA"). Plaintiff also asserts interference and retaliation claims under the Family Medical Leave Act, 29 U.S.C § 2601 et seq., as amended ("FMLA").

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over all causes of action in this Complaint.

4. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because the unlawful employment practices described herein were committed within the Gainesville Division of the United States District Court for the Northern District of Georgia.

## PARTIES

5. Plaintiff is a citizen of the United States of America.

6. Plaintiff is a resident of the state of Georgia.

7. Kubota is a Georgia corporation with a principal place of business at 2715 Ramsey Road, Gainesville, Georgia 30501-7526.

8. Kubota may be served with process by delivering a copy of the Summons and Complaint to its registered agent, R. Brent Hatcher, at 301 Green Street, Suite 200, Gainesville, Georgia 30501.

9. Kubota is a covered employer within the meaning of the FLSA.

10. At all times relevant to this lawsuit, Kubota was an enterprise engaged in commerce or in the production of goods for commerce.

11. At all times relevant to this lawsuit, Kubota had at least two (2) employees engaged in interstate commerce or in handling, selling or otherwise working on goods or materials that had been moved in or produced for commerce.

12. Kubota manufactures and distributes industrial and agricultural equipment (e.g., backhoes, lawn tractors, utility vehicles, etc.) throughout the United States of America.

13. Kubota has more than 1,000 employees.

14. At all times relevant to this lawsuit, Kubota had at least $500,000.00 in annual gross volume of sales made or business done.

15. At all times relevant to this lawsuit, Kubota was Plaintiff's "employer" as that term is defined by 29 U.S.C. § 203(d).

16. Kubota employed Plaintiff from January 19, 2004 to November 13, 2019.

17. Kubota categorized Plaintiff as a W-2 employee.

18. Kubota controlled the terms and conditions of Plaintiff's employment (e.g., his job duties, work hours, pay, etc.).

19. Kubota is a covered employer within the meaning of the FMLA because (1) it was a "person" engaged in an industry or activity affecting commerce in 2018 and 2019, and (2) it had at least 50 full-time employees working in each of 20 or more consecutive calendar weeks in 2018 and 2019. See 29 U.S.C. § 2611(4)(A)(i).

20. Plaintiff is an "eligible employee" within the meaning of the FMLA because (1) he had been employed at Kubota for at least 12 months prior to making his leave request, (2) he had worked for at least 1,250 hours during the 12-month period prior

to making his leave request, and (3) he worked at a location with at least 50 full-time employees within a 75-mile radius. See 29 U.S.C. § 2611(2)(A)(i), (ii), (B)(ii).

## TOLLING AGREEMENT

21. On December 19, 2019, Plaintiff and Defendant entered into a Tolling Agreement that tolled the statute of limitations "[w]ith respect to any and all claims or causes of action under the Fair Labor Standards Act . . . as of December 12, 2019 [] until fifteen (15) days after either party provide[d] written notice of the termination of the [Tolling] Agreement." See Tolling Agreement, attached as **Exhibit A**.

22. On November 3, 2021, before filing this action, Plaintiff provided written notice of termination of the Tolling Agreement to Kubota's Counsel. See Notice of Termination of Tolling Agreement, attached as **Exhibit B**.

## STATEMENT OF FACTS REGARDING PLAINTIFF'S FLSA CLAIM

23. On January 19, 2004, Plaintiff started working at Kubota as an assembly line worker.

24. Around 2006, Plaintiff was promoted to Technical Writer.

25. Around 2014, Plaintiff was promoted to Engineering Change Notice ("ECN") Analyst.

26. As an ECN Analyst, Plaintiff reported to Lead Curtis Black, who in turn reported to Production Control Manager Deborah Smith.

27. As an ECN Analyst, Plaintiff performed non-exempt work.

28. Plaintiff entered engineering change notices (ECNs) into a computer-based system (AS400) and the effective dates of those changes.

29. Plaintiff did not create the ECNs.

30. Plaintiff did not decide whether to approve or deny the ECNs.

31. Around March of 2019, Plaintiff started reporting to Shipping Manager Matt McCarty, at which time Plaintiff also started performing data entry and data review work related to past-due shipping orders.

32. Plaintiff identified past-due shipping orders, notified the appropriate personnel, gathered information, and updated the computer system.

33. Plaintiff also performed manual labor as needed (which is how Plaintiff sustained his back injury on November 5, 2019).

34. During the period between December 12, 2016 and November 5, 2019 (the "Relevant FLSA Time Period"), Plaintiff did not have any direct reports, he did not have the authority to discipline other employees, and he did not have the authority to hire or fire or to make recommendations for hiring or firing.

35. During the Relevant FLSA Time Period, Plaintiff consistently worked more than 40 hours in a workweek but was not paid overtime.

36. Plaintiff was scheduled to work from 7:30 a.m. to 4:30 p.m. with a one-hour lunch break, Monday through Friday, but he often started early and finished late.

37. Kubota knew that Plaintiff worked more than 40 hours in a week.

38. Plaintiff was required to clock in and out of Kubota's timekeeping system until around mid-November of 2018.

39. Plaintiff often reported more than 40 hours in a week when he clocked in and out.

40. Plaintiff complained to management about the lack of overtime pay.

41. Management promised to pay Plaintiff for working overtime but never did.

42. Around mid-November of 2018, management instructed Plaintiff to stop clocking in and out.

## STATEMENT OF FACTS REGARDING PLAINTIFF'S FMLA CLAIMS

43. On Tuesday, November 5, 2019, Plaintiff suffered an injury at work that resulted in a "serious health condition."

44. Later that same day, Plaintiff went to the Emergency Room ("ER") at Piedmont Athens Regional Hospital ("Piedmont Hospital").

45. The ER doctor diagnosed Plaintiff with a lumbar strain and muscle spasm.

46. The ER doctor prescribed pain medication.

47. The ER doctor advised Plaintiff to follow up with his employer's workers' comp. doctor or, in the absence of such, a neurosurgeon, and to refrain from driving and working until at least Monday, November 11, 2019.

48. On November 6, 2019, Plaintiff informed Mr. McCarty (1) that he had injured his back, (2) that he could not work, (3) that he had been treated at Piedmont

Hospital, and (4) that, per the ER doctor, he needed to take leave until November 11, 2019.

49. Plaintiff texted a work excuse to Mr. McCarty. The work excuse confirmed that Plaintiff had been treated at Piedmont Hospital and that he was unable to return to work until November 11, 2019.

50. That same day, Plaintiff conveyed the same information to Safety Manager Paul Cowart and provided a copy of the work excuse.

51. Neither Mr. Cowart nor anyone else at Kubota informed Plaintiff of his rights under the FMLA.

52. On Wednesday, November 7, 2019, Plaintiff was examined by Kubota's workers' comp. doctor.

53. On Sunday, November 10, 2019, Plaintiff was examined by Kubota's workers' comp. doctor.

54. At the November 10th doctor's appointment, the worker's comp. doctor prescribed more pain medication to Plaintiff and told Plaintiff to follow up within seven days. Kubota's workers' comp. doctor also told Plaintiff to remain off work until Tuesday, November 12, 2019, and to abide by certain work restrictions when he returned to work.

55. Plaintiff's work restrictions included: no lifting/pushing/pulling over five pounds, no driving, no climbing/bending/stooping, and no standing/walking for more than an hour.

56. On Sunday, November 10, 2019, Plaintiff emailed a copy of his work excuse to Paul Cowart. The work excuse included Plaintiff's work restrictions and follow-up treatment instructions.

57. On November 12, 2019, when Plaintiff returned to work, he was suspended.

58. On November 13, 2019, Plaintiff was terminated.

59. The alleged reason for Plaintiff's termination was "violation of rules." See Separation Notice, attached as **Exhibit C**.

60. On February 27, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") Atlanta District Office for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"). Plaintiff's Charge is still pending with the EEOC.

## COUNT ONE
## Fair Labor Standards Act
## Failure to Pay Overtime

61. Plaintiff reasserts and incorporates by reference Paragraphs 5 through 18 and 21 through 42 of this Complaint as if fully set forth herein.

62. Kubota violated the FLSA by failing to pay Plaintiff overtime.

63. During the Relevant FLSA Time Period, Plaintiff performed non-exempt work.

64. During the Relevant FLSA Time Period, Plaintiff worked more than 40 hours in a week.

**Willfulness**

65. Kubota willfully disregarded its obligations under the FLSA and, therefore, the statute of limitations period should be extended from two years to three years.

66. Kubota knew or should have known that Plaintiff was a non-exempt employee and was entitled to be paid overtime.

67. Plaintiff performed routine administrative duties and manual labor as needed.

68. Kubota knew that Plaintiff worked more than 40 hours per week because (1) Plaintiff often reported more than 40 hours in a week, and (2) Plaintiff complained to management about working overtime without additional pay.

69. As of mid-November of 2018, Kubota failed to keep any record of Plaintiff's actual work hours in violation of the FLSA's recordkeeping requirements.

**Damages**

70. As a result of Kubota's unlawful conduct, Plaintiff is entitled to recover his actual unpaid overtime wages, an equivalent amount as liquidated damages, and his attorneys' fees and costs.[1]

71. For 2016, Plaintiff estimates that he is owed approximately $229.05 in actual unpaid overtime wages.[2]

72. For 2017, Plaintiff estimates that he is owed approximately $5,726.25 in actual unpaid overtime wages.[3]

73. For 2018, Plaintiff estimates that he is owed approximately $6,112.50 in actual unpaid overtime wages.[4]

74. For 2019, Plaintiff estimates that he is owed approximately $5,186.81 in unpaid overtime wages.[5]

75. Accordingly, Plaintiff is entitled to recover unpaid overtime wages in the approximate amount of $17,254.61, liquidated damages in the approximate amount of $17,254.61, and his attorneys' fees and costs.

## COUNT TWO
## Family Medical Leave Act
## Interference

---

[1] Plaintiff's initial estimate of damages is based on the limited information available at this time. Plaintiff reserves the right to re-calculate his damages after discovery.
[2] (3.75 [OT Hours] x $30.54 [OT Rate]) x (2 [Workweeks]) = $229.05
[3] (3.75 [OT Hours] x $30.54 [OT Rate] x 50 [Workweeks]) =$5,726.25
[4] (3.75 [OT Hours] x $32.60 [OT Rate] x 50 [Workweeks]) = $6,112.50.
[5] (3.75 [OT Hours] x $32.60 [OT Rate] x 27 [Workweeks]) + (3.75 [OT Hours] x $33.53 [OT Rate]) x 15 [Workweeks]) = $5,186.81.

76. Plaintiff reasserts and incorporates by reference Paragraphs 5 through 20 and 43 through 60 of this Complaint as if fully set forth herein.

77. On November 5, 2019, Plaintiff suffered an injury at work that resulted in a "serious health condition."

78. Plaintiff's back injury rendered him unable to work for three or more consecutive calendar days.

79. Plaintiff's back injury also required a "regimen of continuing treatment."

80. Plaintiff was prescribed pain medication.

81. Plaintiff was treated by a healthcare provider more than two times within the first 30 days of incapacity.

82. Kubota knew that Plaintiff's injury was a "serious health condition."

83. Kubota knew that Plaintiff was unable to work for three or more consecutive calendar days and was treated by healthcare providers three times within the first five days after his injury.

84. Plaintiff's leave of absence from November 6, 2019 through November 11, 2019 was protected under the FMLA.

85. Upon returning from FMLA-protected leave on November 12, 2019, Kubota suspended Plaintiff and fired him the next day.

86. Kubota interfered with Plaintiff's rights under the FMLA when it terminated Plaintiff for taking FMLA-protected absences.

87. Kubota's conduct was intentional and willful and committed with reckless disregard for Plaintiff's rights under the FMLA.

88. The effect of Kubota's conduct has been to deprive Plaintiff of his position, wages, and other benefits of his employment at Kubota.

89. Plaintiff is entitled to both monetary and equitable relief for Kubota's violations of the FMLA, including, but not limited to, back pay, front pay and/or reinstatement, liquidated damages, lost benefits, attorneys' fees, and litigation costs. See 29 U.S.C. § 2617(a)(1)(A) and (B).

## COUNT THREE
## Family Medical Leave Act
## Retaliation

90. Plaintiff reasserts and incorporates by reference Paragraphs 5 through 20, 43 through 60, and 77 through 85.

91. On November 6, 2019, Plaintiff notified Kubota of his need for FMLA-qualifying leave.

92. On November 10, 2019, Plaintiff notified Kubota of his need to extend his FMLA-qualifying leave through November 11, 2019, and of his need to take FMLA leave in the future for more treatment.

93. On November 12, 2019 when Plaintiff returned to work from FMLA leave, Kubota suspended him.

94. On November 13, 2019, Kubota fired Plaintiff.

95. Kubota terminated Plaintiff for taking FMLA-qualifying leave and/or for notifying Kubota of his need to take FMLA leave in the future.

96. Kubota's conduct was intentional and willful and committed with reckless disregard for Plaintiff's rights under the FMLA.

97. As the direct and proximate result of Kubota's conduct, Plaintiff lost his position, wages, health insurance, and other benefits of his employment.

98. Plaintiff is entitled to both monetary and equitable relief for Kubota's violations of the FMLA, including, but not limited to, back pay, front pay and/or reinstatement, liquidated damages, lost benefits, attorneys' fees, and litigation costs. See 29 U.S.C. § 2617(a)(1)(A) and (B).

## DEMAND FOR JURY TRIAL

99. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

A. For a trial by jury on all issues so triable;

B. For a declaratory judgment that Kubota violated Plaintiff's rights under the FLSA;

C. For a judgment in Plaintiff's favor for unpaid overtime wages, an equivalent amount as liquidated damages, prejudgment interest on unpaid wages, reasonable attorneys' fees and costs in accordance with the FLSA, and all

other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA;

D. For a declaratory judgment that Kubota violated Plaintiff's rights under the FMLA;

E. For full back pay, front pay, and employment benefits with prejudgment interest thereon, an equivalent amount as liquidated damages, reasonable attorneys' fees and costs in accordance with the FMLA, and all other legal and equitable relief as may be appropriate to effectuate the purposes of the FMLA; and

F. For such other and further relief as this Court deems proper and just.

Respectfully submitted this 3rd day of November 2021.

SMITH LAW, LLC

*/s/ Louise N. Smith*
Louise N. Smith
Georgia Bar No. 131876
louise@smithlaw-llc.com
William J. Smith
Georgia Bar No. 710280
william@smithlaw-llc.com
*Attorneys for Plaintiff*

3611 Braselton Highway
Suite 202
Dacula, GA 30019
T: (678) 889-5191 (main)
T: (678) 889-2898 (Louise)
T: (678) 889-2264 (William)
F: (844) 828-5615

## FONT AND POINT CERTIFICATION

The undersigned counsel for Plaintiff hereby certifies that the within and foregoing pleading was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B), NDGa.

This the 3rd day of November 2021.

*/s/ Louise N. Smith*
Louise N. Smith
Georgia Bar No. 131876
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused or will cause service to issue upon Defendants to this Action pursuant to Fed. R. Civ. P. 4.

This the 3rd day of November 2021.

*/s/ Louise N. Smith*
Louise N. Smith
Georgia Bar No. 131876
*Attorney for Plaintiff*